**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

John Beatty, Thomas Beatty, William Gleason, Timothy Krieger, and David Pichotta, on behalf of themselves and all other persons similarly situated,

Plaintiffs,

v.

North Central Companies, Inc., a Minnesota corporation, Larry R. Zilverberg, Scott Moarn, John Bowlsby, Gregory J. Zilverberg, Mark R. Jeffries, and John Does Nos. 1 through 10 and Mary Roes Nos. 1 through 10,

Defendants.

Civil No. 00-186 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Philip W. Getts, Esq., Getts Law Office, 2116 2nd Avenue South, Minneapolis, Minnesota 55404 and Mark J. Vieno, Esq., Vieno Law Office, 2116 2nd Avenue South, Minneapolis, Minnesota 55404, appeared on behalf of the plaintiffs.

Alan I. Silver, Esq., Bassford, Lockhart, Truesdell & Briggs, 3550 Multifoods Tower, 33 South 6th Street, Minneapolis, Minnesota 55402 and Scott R. Carlson, Esq., Duckson & Carlson, 333 West 7th Street South, Suite 2100, Minneapolis, Minnesota 55402, appeared on behalf of the defendants.

---

**Introduction**

The above-entitled matter came on for hearing before the undersigned United States District Judge on January 12, 2001, pursuant to Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment.[1] In the Amended Complaint, Plaintiffs allege

---

[1] At the hearing before the Court on January 12, 2001, the Court informed the parties that it would withhold ruling on Defendants' Motion to Strike Plaintiffs' Memorandum and Plaintiffs' corresponding Motion for Leave to File a Reply Memorandum and Exceed the Page Limits. The Court now grants Defendants' motion and denies Plaintiffs' motion, finding

(continued...)

FILED MAR 14 2001
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD MAR 14 2001
DEPUTY CLERK

that Defendants' commission compensation structure has resulted in violations of: (1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*; (2) the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*; (3) Minn. Stat. §§ 181.14, 181.145, and 181.79; and additional state law claims of (4) unjust enrichment; (5) conversion and misappropriation; (6) imposition of constructive trust; and (7) breach of contract. For the reasons stated below, Defendants' Motion for Summary Judgment is granted, and Plaintiffs' Motion for Partial Summary Judgment is denied.

**Background**

There is virtually no dispute between the parties as to the underlying facts of this case. Rather, the dispute focuses on the legality of how North Central structured and operated its compensation scheme for trader-employees. For purposes of this order, the Court will describe North Central's compensation structure as it was during Plaintiffs' employment, recognizing that changes may have been implemented subsequent to Plaintiffs' termination.

Defendant North Central Companies, Inc. ("North Central") is a trading company in the industry of agricultural products and by-products, and the other named Defendants are shareholder-traders of North Central. The Plaintiffs were formerly employed by North Central as commodities traders and at-will employees.

Pursuant to industry practice, North Central traders were compensated on a commission calculated from their individual net profits. In order to determine a trader's net profits, North Central treated each trader as an independent profit center responsible for its own business

---

[1](...continued)
that even if it were to consider Plaintiffs' reply memorandum, the analysis and outcome of the current matter would be the same.

expenses and a proportionate share of North Central's operating costs. Included in the costs were insurance costs specific to each trader, salaries of office staff, office rent, and payroll taxes. At the end of each month, a trader's gross trade profits were calculated, individual and shared costs were subtracted, and the net result was used as the base from which commission was to be calculated.

In 1985, the shareholders settled on a commission wage of 70% of a trader's net profits, 30% of the net profits being retained by North Central. A trader was entitled to a monthly draw against commissions of $1,667.00. When the amount of the earned commissions exceeded the amount of the draw, the trader would receive the difference at the end of each quarter of the fiscal year. During certain time periods, North Central also placed a cap on its per trader share so that the excess would revert to the trader, e.g. if North Central's 30% share exceeded a $35,000 cap, then the excess would be paid to the trader.

In 1989, North Central adopted a profit-sharing plan in response to the traders' request for some type of retirement plan. In order to fund the plan, North Central adjusted the percentage of net profits paid on commission. As a result, traders then received 60% of their net income as commission, 10% was paid to the profit-sharing plan, and North Central retained its 30% share.

In November 1991, North Central recalculated the shares so that traders received a 63.64% commission, 6.36% was paid in to the profit-sharing plan, and the company retained its 30% share. In 1995, the shares were further adjusted so that 60.87% was paid as commission, 30% was retained by the company, and the remainder was paid into the plan.

Plaintiffs maintain that the 1991 change occurred because North Central was concerned that their plan more closely resembled an employee-funded 401(k) retirement plan than a profit-sharing plan and that the 10% of net profit contribution resulted in an excess of the

maximum allowed under the Internal Revenue Code. Defendants contest Plaintiffs' characterization to the extent that it implies illegality. Rather, Defendants explain the 1991 change as an overly cautious response to the potential *appearance* that the plan was operating as a 401(k), but they maintain that it always operated as intended, as a profit-sharing plan.

Of additional note is the litigation and procedural history between the parties. In 1997, Plaintiffs Gleason and Pichotta resigned from North Central to start their own business. Shortly thereafter, they began employment as commodities traders at Equinox Enterprises, Inc. North Central brought suit against Plaintiffs Gleason and Pichotta for violation of the non-competition clauses of their North Central employment contracts and for theft of trade secrets and additional proprietary information. In 1999, Plaintiffs John Beatty, Thomas Beatty, and Thomas Krieger resigned from North Central and began work as commodities traders for the newly-formed Twin Cities Trading Company. In January 2000, North Central brought suit against Plaintiffs John Beatty, Thomas Beatty, and Krieger, alleging the same causes of action as it did against Plaintiffs Gleason and Pichotta. Both cases have been consolidated and are currently pending in Hennepin County District Court. Also in January 2000, Plaintiffs commenced this action in Hennepin County District Court. Defendants removed the case to federal court, resulting in the current action before this Court.

## Discussion

### 1. Cross-Motions for Summary Judgment

#### a. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the

light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**b. In General**

The parties do not dispute the facts of this case. Plaintiffs have moved the Court for partial summary judgment on Counts II through VIII. In addition, Plaintiffs seek appointment of a special master pursuant to Fed. R. Civ. P. 53 to determine the precise nature and extent of relief to be granted. Defendants' Counter-Motion for Summary Judgment seeks judgment in their favor on all counts of Plaintiffs' First Amended Complaint. In order to address both parties' motions simultaneously, the Court will evaluate each count of Plaintiffs' First Amended Complaint: (1) Count I: RICO; (2) Count II: Minn. Stat. §§ 181.14 & 181.145; (3) Count III: Minn. Stat. § 181.79; (4) Count IV: Conversion and Misappropriation; (5) Count V: Unjust Enrichment; (6) Count VI: Breach of Contract; (7) Count VII: Imposition of Constructive

Trust; (8) Count VIII: Beach of ERISA Fiduciary Duty; (9) Count IX: Directing Disbursement of Illegal Profit-Sharing Plan Contributions Made From Employee Wages. For purposes of coherence, however, the Court will first address some general issues and then will address each Count in an order different from that in which they were alleged in the Amended Complaint.

Defendants contend that Plaintiffs' claims should be substantially limited by the statutes of limitations relevant to their claims. First, Defendants contend that all of Plaintiffs' claims involve a claim for additional wages and therefore should be subject to the two-year statute of limitations provided under Minn. Stat. § 541.07 (5).[2] In the alternative, Defendants maintain that the RICO claim should be subject to a four-year limitations period as established in *Rotella v. Wood*, 528 U.S. 549 (2000), and the ERISA claim(s) subject to a six-year period under 29 U.S.C. § 1113. Plaintiffs contend, however, that Defendants' argument is flawed for failing to identify when each Plaintiff's claims accrued. They further maintain that none of the claims should be barred "because the conduct at issue constitutes a 'continuing wrong' that continues even as

---

[2] Except where [otherwise prescribed], the following actions shall be commenced within two years:

* * *

> (5) for the recovery of wages or overtime or damages, fees or penalties accruing under any federal or state law respecting the payment of wages or overtime or damages, fees or penalties except, that if the employer fails to submit payroll records by a specified date upon request of the department of labor and industry or if the nonpayment is willful and not the result or mistake or inadvertence, the limitations is three years. (The term "wages" means all remuneration for services or employment, including commissions and bonuses and the cash value of all remuneration in any medium other than cash, where the relationship of master and servant exists and the term "damages" means single, double, or treble damages, accorded by any statutory cause of action whatsoever and whether or not the relationship of master and servant exists.)

* * *

Minn. Stat. § 541.07 (5).

these motions are presented to the Court." Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 17.

The Court finds that the "continuing wrong" doctrine is properly invoked in this case. Defendants' contention that the implementation of the profit-sharing plan represents a distinct act, thus precluding application of the doctrine, is unconvincing and apparently ignores the claims relating to the commission structure and payment of payroll taxes. To the extent that Plaintiffs have asserted their claims on their own behalf, i.e. as opposed to on behalf of the profit-sharing plan, then the "continuing wrong" doctrine would appear to apply only up until the time that each Plaintiff left the employ of North Central. Consequently, any of Plaintiff Gleason's and Pichotta's claims subject to a two-year limitations period would be time barred. The Court finds, however, that to the extent that Plaintiffs' claims are subject to Minn. Stat. § 541.07 (5), they are governed by a three-year limitations period, given the nature of Plaintiffs' allegations. Minn. Stat. § 541.07 (5) (providing three-year limitations period "if the nonpayment is willful and not the result of mistake or inadvertence"). Those claims subject to the longer limitations periods are also timely filed. Regardless of whether Plaintiffs' claims are timely or limited by time in terms of damages, however, the Court finds Plaintiffs' claims to be meritless on several grounds as will be discussed below.

In addition, Plaintiffs argue that Defendants' Motion with respect to the RICO and state law claims should be treated by the Court as a Motion to Dismiss rather than a Motion for Summary Judgment. The Court declines to do so. While the Court finds that both parties have provided thinner arguments with respect to the state law claims, in particular, the Court finds that each of Plaintiffs' claims is based on the same basic theory, creating substantial overlap in the

application of the arguments presented. The Court finds sufficient development of facts and law upon which to base its decisions of summary judgment with respect to all of Plaintiffs' claims.

**c. Count I: RICO**

Plaintiffs claim that the Defendants operated North Central in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1962, subparts (a), (c), and (d), primarily based on allegedly improper Federal Insurance Contributions Act, 26 U.S.C. § 3111, *et seq.* (FICA) and Federal Unemployment Tax Act, 26 U.S.C. § 3301, *et seq.* (FUTA) payroll deductions. The relevant RICO provisions state in pertinent part that:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in the activities of which affect interstate or foreign commerce. . . .
>
> * * *
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962 (a), (c), & (d). Under RICO, an "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Both FICA and FUTA impose on employers an excise tax to be paid in part from the wages of each employee and in part from the funds of the employer. 26 U.S.C. § 3111, *et seq.*; 26 U.S.C. § 3306, et seq.

In order to demonstrate a violation of RICO, a plaintiff must establish: (1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in predicate acts of racketeering; and (4) defendant's actions constitute a pattern of racketeering activity. *United HealthCare v. American Trade Ins. Co., Ltd.*, 88 F.3d 563, 570 (8th Cir. 1996) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Defendants challenge the RICO claim, arguing that Plaintiffs have failed to establish the necessary element of "enterprise." They contend that because North Central is also named as a defendant that it cannot also be the enterprise affected in violation of RICO. Plaintiffs argue, however, that their RICO claim pertains only to Defendants Zilverberg and Moarn.

Defendants are correct that the enterprise must be distinct from the party named as a defendant. *United States v. Turkette*, 452 U.S. 576, 583 (1981); *United Health Care*, 88 F.3d at 570. The first sentence outlining Count I in the First Amended Complaint apparently implicates North Central *and* Defendants Zilverberg and Moarn as being liable under RICO. "For their first cause of actions [*sic*] against defendants North Central Companies, Zilverberg, and Moarn, plaintiffs restate and incorporate by reference the allegations of Paragraphs 1 through 58 above and further state and allege as follows." First Amended Complaint, p. 14. In addition, Defendants' position is arguably further supported by Plaintiffs' repeated identification of North Central as a defendant throughout the outline of Count I. When evaluated in light of the entire complaint and the description of the specific conduct alleged to constitute the RICO violation, however, Plaintiffs' allegations depict Defendants Zilverberg and Moarn as the actors affecting the enterprise of North Central.

Even assuming that the RICO claim is properly asserted against Defendants Zilverberg and Moarn with respect to the element of "enterprise," North Central being the enterprise

affected, the Court still finds summary judgment to be proper for lack of predicate acts. Plaintiffs contend that Defendants committed theft, wire fraud, and mail fraud through their management of North Central, resulting in the alleged RICO violation. The predicate acts themselves are based on alleged FICA and FUTA violations.[3] Plaintiffs maintain that the method by which Defendants Zilverberg and Moarn calculated the employer contributions to FICA and FUTA resulted in the employer's payments being improperly subtracted from funds belonging to the trader-employees. The Court disagrees.

Defendants contend that Plaintiffs should be estopped from raising this claim here because a nearly identical claim was litigated between other trader-employees and North Central in Minnesota state court. *See North Central Companies, Inc. v. Sande, et al.*, CT 98-1878, slip op. at 4-6 (Minn. 4th D. Ct. Jan. 13, 1999). Plaintiffs contest by stating that the parties are different, no privity with the original parties can be established, and that a state court decision has no precedential effect on this Court. While it is clear that the current plaintiffs were not involved in the prior state court action, they are in the same position as the earlier plaintiffs against the identical defendant. Moreover, to argue that the state court's ruling has no impact on the purview of this Court implicitly questions the competency of the state court to adjudicate the FICA/FUTA issue before it. It is irrelevant that the issue is now cloaked in a RICO claim before this Court because the dispositive analysis remains the same. Even if the Court were to reach the merits of Plaintiffs' claim, however, the Court agrees with the state court analysis and would reach the same conclusion as the state court did in *Sande, et al.*

---

[3] Plaintiffs cite no provision of FICA or FUTA providing a private right of action. Even assuming that such a right exists, Plaintiffs have failed to establish that Defendants are in violation of either statute.

Defendants derived the employer's share of FICA and FUTA taxes from the gross profits of each trader. Plaintiffs have provided no legal support to assert an ownership interest in the gross profits of their work. Effectively, the gross profits they generate are funds belonging to the company from which the trader's compensation is later calculated. When the employer's share of FICA and FUTA is calculated just prior to dividing the net profits, it is mathematically possible to determine the trader's share and therefore, the proper FICA and FUTA contributions. While it may be complicated accounting for an employer to determine its prospective share of employment taxes in this way, it is certainly not impossible. If the Court were to follow Plaintiffs' line of reasoning so that the employer's share could only be subtracted from the 30% of net profits, then it would be mandating North Central to compensate the traders at a higher level than negotiated. The Court declines to do so.

Thus, Plaintiffs' RICO claim against Defendants Zilverberg and Moarn must fail. To the extent that Plaintiffs' RICO claims rest on alleged violations other than those related to FICA and FUTA, Plaintiffs' claims must also fail for lack of the required predicate acts as the Court will discuss below.

**d. Count VIII: Beach of ERISA Fiduciary Duty**

Plaintiffs assert that Defendants have breached their fiduciary duties under ERISA by the manner in which they operated the compensation scheme and profit-sharing plan. Plaintiffs' arguments imply, however, that they are challenging their share of net profits rather than the management of the profit sharing plan. Nonetheless, Plaintiffs allege that the 1991 change in funding of the profit-sharing plan indicates that North Central was knowingly operating the plan contrary to the Internal Revenue Code, thus violating their fiduciary duty to the plan. They contend that by adjusting the traders' commission percentage in order to fund the plan,

North Central was improperly using money belonging to the traders to fund the plan and, consequently, threatening the plan's qualification under 26 U.S.C. § 401(a). Neither the regulations or code provisions cited by the Plaintiffs nor their arguments, however, support such an allegation. 26 U.S.C. § 401(a); Treas. Reg. § 1.401-1. Accordingly, the Court finds no merit in Plaintiffs' ERISA claim.

First, Plaintiffs have provided no evidence or law supporting the contention that the deductions from the 70% commission share of net profits constituted money to which the traders were entitled. It is uncontested that Plaintiffs were employed by North Central as at-will employees. In Minnesota, the compensation of an at-will employee may be adjusted by the employer at any time during employment without the employee's consent. *See Pershern v. Fiatallis N. Am., Inc.*, 834 F.2d 136, 138 (8th Cir. 1987) (holding employer's unilateral modification of employment relationship to be binding on employee); *Aberman v. Malden Mills Indus., Inc.*, 414 N.W.2d 769, 772 (Minn. App. 1987) (holding at-will employee not entitled to continuing position or specific commission rate). The fact that North Central adjusted the commission percentage of net profits paid directly to the traders is in line with the at-will doctrine. Under this doctrine, North Central could have legally adjusted the traders' share downward without even providing the alternative compensation paid through the profit-sharing plan. Indeed, the facts demonstrate that North Central was providing exactly the type of compensation structure desired by the traders when the profit-sharing plan was originally established.

Of particular note is the similarity of the instant case with the facts of *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491 (3rd Cir. 1994). In *Haberern*, the Third Circuit found that an employer's ability to decrease the salary of an at-will

employee in order to fund a benefit plan was not preempted by ERISA and, additionally, that the employer's decision to do so constituted a management decision not subject to the fiduciary constraints under ERISA. The present case presents a nearly identical scenario under ERISA, and the Court agrees with the analysis in *Haberern*.

Plaintiffs' arguments also fail for additional reasons. They contend that North Central's plan is threatened with disqualification and that the shareholder-defendants knowledge of and lack of response to this alleged threat constitutes a breach of their fiduciary duty. 26 U.S.C. § 401(a) of the Internal Revenue Code states in pertinent part that:

> (a) **Requirements for Qualification.**-A trust created or organized in the United States and forming part of a . . . profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section-
>
> (1) if contributions are made to the trust by such employer, or employees, or both . . .

26 U.S.C. § 401(a). As the Court has found above, the money that North Central used to fund the profit-sharing plan was money belonging to the company. Even if the money belonged to the Plaintiffs, however, there is no clear language in the Internal Revenue Code that prohibits a qualified plan from being funded with such money.

Moreover, Plaintiffs have not demonstrated any loss to the plan due to the alleged breach. Rather, they contend that the money paid into the plan should have been paid directly to the traders, and the plan contribution should have been taken out of the company's 30% share. As the Court has already discussed, the traders were not entitled to the entire 70% share without modification. Further, ERISA does not provide for a private cause of action to recover loss to an individual, but, rather, requires actions to be brought on behalf of the plan. *See Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 139 (1985) (interpreting § 409 of ERISA and

holding that action for fiduciary breach may be for loss to plan but not individual participant). To the extent that Plaintiffs' claim is based on the plan's potential loss of qualification, their claim must also fail. The Court does not agree with Defendants' contention that the Department of Labor approved of North Central's plan, given their investigation and lack of subsequent action. However, the Court also finds no indication that the plan is threatened with disqualification nor that any threat has or will result in harm to the plan. Nonetheless, Plaintiffs cannot rest their claim on mere speculative harm as they have attempted to do here. *Howe v. Varity Corp.*, 36 F.3d 746, 756-57 (8th Cir. 1994) (holding that ERISA provides relief for clearly ascertainable damages so that plaintiff is made whole, precluding recovery for speculative future harm).

Finally, the parties argue the nature of the Defendants' decisions in operating the profit-sharing plan. Plaintiffs maintain that Defendants' decisions to adjust the commission percentages constituted administrative functions of the plan, thus, implicating their fiduciary duties to the plan. Defendants argue, however, that such decisions were settlor functions and therefore did not impact their fiduciary duties. Given the Court's finding that the Defendants' decisions to adjust percentages neither violated the Internal Revenue Code nor misappropriated funds from the Plaintiffs, it is irrelevant whether such decisions were settlor or administrative actions. Nonetheless, the Court finds that, in light of relevant case law, such decisions were settlor functions, thus providing no basis under ERISA for implicating fiduciary responsibility. *Haberern*, 24 F.3d at 1499.

For the reasons stated above, the Court issues summary judgment in favor of Defendants on Count VIII. Given that the Court has found no merit to Plaintiffs' substantive claims, the Court denies Plaintiffs' request to appoint a special master pursuant to Fed. R. Civ. P. 53.

**e. Count IX: Directing Disbursement of Illegal Profit-Sharing Plan Contributions Made From Employee Wages**

Plaintiffs' final count in their Amended Complaint alleges other fiduciary violations of ERISA. Plaintiffs have failed to present facts or law to outline such claims. To the extent that they overlap with the Court's discussion of the ERISA claim discussed above, the Court correspondingly finds that Plaintiffs' additional fiduciary claims are without merit. Even if no overlap exists, however, the Court still finds no legal basis for Count IX given that North Central's commission structure and profit-sharing plan have not been proven to have operated illegally.

**f. Count II: Minn. Stat. §§ 181.14 & 181.145 & Count III: Minn. Stat. § 181.79**

Minn. Stat. §§ 181.14, 181.145, and 181.79 relate to the repayment of wages and commissions due to an employee upon termination. Because the Court has not found North Central's compensation structure to violate FICA, FUTA, ERISA, or the Internal Revenue Code as Plaintiffs have characterized, there is no evidence that there are wages or commissions due and owing to the Plaintiffs and therefore recoverable under these statutes.

Plaintiffs' contention that Defendants should have requested Plaintiffs' permission before implementing the compensation structure as they did is entirely without merit. Such an argument implies that Plaintiffs were entitled to 70% of their net profits and that any adjustment to that percentage would require their authorization or otherwise amount to near theft.

As discussed above, Plaintiffs were at-will employees and therefore subject to the discretion of their employer in the area of compensation. The decisions that North Central and its shareholders made in adjusting the compensation of its traders did not detract from wages or compensation due and owing, but rather defined what that amount was to be. Thus, North

Central was not required to seek authorization from its employees when determining their compensation. Moreover, the adjustment of commission percentages was done with the knowledge and support of North Central employees when implementing the profit-sharing plan and was explicitly provided to traders who were hired thereafter. The Court finds Plaintiffs' statutory state law claims to be without merit.

**g. Remaining State Law Claims: Count IV: Conversion and Misappropriation; Count V: Unjust Enrichment; Count VI: Breach of Contract; Count VII: Imposition of Constructive Trust**

The Court also finds no merit to Plaintiffs' remaining state law claims. Both parties pay short-shrift to the remaining claims, apparently because all of Plaintiffs' claims arise from the same basic theory that Defendants improperly implemented the commission structure and the profit-sharing plan. As discussed above, the Court finds no merit to these arguments and thus, issues summary judgment for the Defendants on the remaining state law claims.

**2. Defendants' Request for Attorney's Fees**

Pursuant to 29 U.S.C. § 1132(g)(1), a court may award reasonable attorney's fees and costs to either party in an ERISA action. Defendants argue that they should be awarded attorney's fees in this case because "[P]laintiffs clearly brought this litigation only after North Central threatened to enforce the non-compete agreements in their employment contracts." While the Court notes the conspicuous timing of the current action and the fact that Plaintiffs' numerous claims are based on the same general challenge to Defendants' conduct, the Court declines to find Plaintiffs' ERISA claims to be purely retaliatory and frivolous and declines to grant attorney's fees to either party.

For the reasons stated, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment (Doc. No. 24) is **GRANTED** with the following exception;

a. Defendants' request for attorney's fees pursuant to 29 U.S.C. § 1132(g)(1) is **DENIED**.

2. Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 54) is **DENIED**;

3. Plaintiffs' First Amended Complaint (Doc. No. 13) and all counts therein are **DISMISSED WITH PREJUDICE**;

4. Defendants' Motion to Strike Plaintiff's Memorandum (Doc. No. 62) is **GRANTED**; and

5. Plaintiffs' Motion for Leave to File Reply Memorandum and Exceed the Page Limits (Doc. No. 65) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 14, 2001

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: MAR 14 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*